**THIS ORDER IS APPROVED.**

**Dated: November 13, 2019**

*Brenda Moody Whinery, Chief Bankruptcy Judge*
_____

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>VICTOR R. WILSON,<br>        Debtor. | Chapter 7 Proceeding<br><br>Case No. 4:18-bk-09042-BMW |
| BRUCE COZART,<br>        Plaintiff,<br>v.<br>VICTOR R. WILSON,<br>        Defendant. | Adv. Case No. 4:18-ap-00495-BMW<br><br>**RULING AND ORDER REGARDING DEBTOR/DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

   This matter came before the Court pursuant to the *Motion to Dismiss Adversary Proceeding* (the "Motion") (Dkt. 6) filed by Victor R. Wilson ("Mr. Wilson" and/or the "Defendant") on December 20, 2018; the *Response to Motion to Dismiss Adversary Proceeding* (the "Response") (Dkt. 9) filed by Bruce Cozart ("Mr. Cozart" and/or the "Plaintiff") on January 18, 2019; the *Reply in Support of Motion to Dismiss Adversary Proceeding* (the "Reply") (Dkt. 10) filed by Mr. Wilson on February 1, 2019; the *Sur-Reply and Motion for Leave to File Limited Sur-Reply* (the "Sur-Reply") (Dkt. 13) filed by Mr. Cozart on April 4, 2019; and all pleadings related thereto.

   On April 4, 2019, the Court held a status hearing at which time the Court converted the

Motion into a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d), as incorporated by Federal Rule of Bankruptcy Procedure 7012. The Court ordered Mr. Wilson to file a separate statement of facts and invited Mr. Cozart to file any additional briefing as well as a controverting statement of facts before his statutory deadline to do so.

On April 22, 2019, Mr. Wilson timely filed the *Defendant's Statement of Facts in Support of Motion to Dismiss Adversary Proceeding / Motion for Summary Judgment* (the "SOF") (Dkt. 18). On October 28, 2019, approximately five months after his deadline to do so, Mr. Cozart filed the *Plaintiff's Statement of Facts in Support of Complaint and Response to Motion to Dismiss Adversary Proceeding/Motion for Summary Judgment* (the "Controverting SOF") (Dkt. 27), which Mr. Wilson has moved the Court to strike. (Dkt. 28). Mr. Cozart did not file a cross-motion for summary judgment.

Based upon the untimeliness of the filing of the Controverting SOF, the Court hereby grants the *Motion to Strike Plaintiff's Statement of Facts* (Dkt. 28) and the Court will not consider the Controverting SOF.

The Court deems this matter suitable for disposition without further argument or briefing. Based upon the pleadings and record before the Court, the Court now issues its ruling.

**I.     Jurisdiction**

This is a core proceeding to determine the dischargeability of debt over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 157(b) and 1334(b).

The parties are deemed to voluntarily consent to the authority of this Court to enter final orders and/or judgments pursuant to Rules 7008-1 and 7012-1 of the Local Rules of Bankruptcy Procedure for the District of Arizona.

**II.    Facts & Procedural Posture**

The following facts are taken from Mr. Wilson's SOF, which was not timely controverted, as well as the documents attached thereto, and will be accepted by the Court for purposes of disposition of this summary judgment proceeding.

Mr. Wilson married Maureen Wilson ("Ms. Wilson") in 1988. (SOF at ¶ 2). In 1995, Ms. Wilson filed a dissolution action in California Superior Court ("State Court"). (SOF at ¶ 4).

In May 1996, Ms. Wilson hired Mr. Cozart to represent her in the dissolution proceeding. (SOF at ¶ 9; SOF, Ex. E at 2). The dissolution case was litigated over the next seven years. (SOF, Ex. E at 2).

As part of the *Judgment for Dissolution of Marriage* (SOF, Ex. B), the State Court found that Mr. Wilson had the ability to earn at least four times as much as Ms. Wilson. (*See* SOF, Ex. B at 3-4). The State Court ordered Mr. Wilson to pay child support and spousal support to Ms. Wilson. (SOF, Ex. B at 4-5). Additionally, the State Court ordered Mr. Wilson "to contribute $10,000 in attorney fees and costs to [Mr. Cozart] as and for non-taxable spousal support." (SOF, Ex. B at 5).

On January 8, 1999, Mr. Wilson was ordered to pay Mr. Cozart an additional $13,900 in fees as non-taxable spousal support. (SOF, Ex. E at 2). Thus, the total attorneys' fees owed by Mr. Wilson to Mr. Cozart as of January 8, 1999 totaled $23,900. (SOF, Ex. E at 2). These fees were payable at $500 per month beginning February 1, 1999, and Mr. Wilson's failure to make two consecutive installment payments would trigger an acceleration clause that would render the entire amount due immediately. (SOF, Ex. E at 2).

On April 15, 1999, after receiving no payments from Mr. Wilson, Mr. Cozart returned to State Court. (SOF, Ex. E at 2-3). On April 21, 1999, the State Court ordered Mr. Wilson to pay Mr. Cozart $25,680.82, representing unpaid attorney's fees and interest. (SOF, Ex. E at 3).

On July 15, 1999, Mr. Cozart filed additional contempt proceedings against Mr. Wilson for his continued failure to pay the legal bill. (SOF, Ex. E at 3). Ultimately Mr. Wilson pled guilty to five counts of criminal contempt. (SOF, Ex. E at 3). "[Mr. Cozart] recited into the record the stipulated sentence, which included 25 custody-days, suspended, as long as [Mr. Wilson] paid 'att[orne]y fees [at the] rate of $300.00 per month beginning 2/15/00 until paid in full and due the 15th of ea[ch] month.'" (SOF, Ex. E at 3). In effect, the parties agreed to a payment plan. (SOF, Ex. E at 3).

"Due to the simple interest costs accruing from 1997 through the beginning of payments in February 2000, and the artificially low monthly installment agreed to by all parties, remittances made by [Mr. Wilson] from February 2000 until February 2003 serviced only the debt's interest

. . . ." (SOF, Ex. E at 3).

Between February 2000 and October 2008, Mr. Wilson asserts that he made monthly installment payments to Mr. Cozart totaling $29,243.58. (SOF at ¶ 11; SOF, Ex. A at ¶ 12). During this period of time, Mr. Wilson asserts that Ms. Wilson also paid $12,500 in fees to Mr. Cozart. (SOF at ¶ 12).

Mr. Wilson stopped making payments on October 31, 2008. (SOF, Ex. E at 3). Approximately seven months later, Mr. Wilson went to Afghanistan as a civilian sub-contractor for the Army. (SOF, Ex. E at 3). Unable to reach Mr. Wilson to discuss his non-payment, Mr. Cozart returned to State Court to seek enforcement of his fees order. (SOF, Ex. E at 3).

On October 6, 2009, the State Court signed an earnings assignment order for spousal or partner support in favor of Mr. Cozart in the amount of $19,068.21, payable at $500.00 per month. (SOF, Ex. E at 3). $17,540.38 of this amount represented outstanding principal, and the remaining $1,527.83 represented interest. (SOF, Ex. E at 3-4). "For all intents and purposes this was a default entry since [Mr. Wilson] was not in court." (SOF, Ex. E at 4).

In November 2009, Mr. Wilson returned from Afghanistan. (SOF, Ex. E at 4). On December 29, 2009, he filed a motion in the State Court seeking a refund of overpaid attorneys' fees and sanctions against Mr. Cozart for allegedly collecting more than was ordered. (SOF, Ex. E at 4).

In October 2011, the State Court denied the refund motion. (SOF at Ex. E). Although Mr. Wilson argued that Mr. Cozart had received third-party payments that had not been credited to reduce the amount of the debt, the State Court found that it did not have sufficient evidence before it to modify the award of attorneys' fees. (SOF at Ex. E).

It is unknown whether Mr. Wilson made any additional payments to Mr. Cozart after the October 2011 ruling was entered, or whether either party sought additional relief from the State Court.

On July 30, 2018, Mr. Wilson filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

On November 14, 2018, Mr. Cozart filed the complaint that initiated this adversary

proceeding. In the complaint, Mr. Cozart asks the Court to find that the debt he is owed, which he alleges to be $23,900 plus 10% interest, falls within the exceptions to discharge in §§ 523(a)(5) and (a)(15).[1]

On December 20, 2018, Mr. Wilson filed the Motion, in which he argues that any outstanding debt does not fall within the scope of § 523(a)(5) or § 523(a)(15) because any such debt is not owed to a spouse, former spouse, or child of Mr. Wilson, and because any such debt is not in the nature of support.

On January 18, 2019, Mr. Cozart filed the Response in which he maintains that the debt at issue represents spousal support that the State Court ordered be paid directly to Mr. Cozart, and therefore the debt falls within the parameters of §§ 523(a)(5) and (a)(15).

On February 1, 2019, Mr. Wilson filed the Reply in which he argues that the debt is not excepted from discharge pursuant to § 523(a)(5) or § 523(a)(15) because neither Mr. Wilson's former spouse nor his children would benefit from a determination that the debt is non-dischargeable given that Mr. Wilson's former spouse is no longer indebted to Mr. Cozart by virtue of an applicable statute of limitations and given that Mr. Cozart's garnishment efforts deprived Mr. Wilson's former spouse of child support payments for a period of time.

Mr. Cozart counters in the Sur-Reply[2] filed on April 4, 2019, that the Court must go back in time twenty years and look at the parties' circumstances at the time the debt was awarded in order to determine whether the debt is in the nature of support. It is his position that the parties' current financial circumstances are irrelevant.

Mr. Wilson argues for the first time in his Reply that he paid off the principal amount of the attorneys' fees awarded, which Mr. Cozart disputes in the Sur-Reply.

### III. Law & Analysis

#### A. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), which is incorporated by Federal Rule

---

[1] Unless otherwise indicated, statutory references are to the Bankruptcy Code, title 11 of the United States Code.

[2] Mr. Wilson filed an *Objection to Plaintiff's Motion for Leave to File Limited Sur-Reply Brief* (the "Objection") (Dkt. 15) on April 4, 2019. At a status hearing held on April 8, 2019, the Court invited the parties to file additional briefs, effectively overruling Mr. Wilson's Objection.

of Bankruptcy Rule 7056, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

The facts submitted are viewed most favorably to the non-moving party. *Tolan v. Cotton*, 572 U.S. 650, 657, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).

B. <u>Section 523(a)(5) – Domestic Support Obligations</u>

Section 523(a)(5) excepts from discharge "any debt – for a domestic support obligation[.]" A domestic support obligation ("DSO") is defined as:

> a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is--
> (A)   owed to or recoverable by—
> (i)   a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
> (ii)   a governmental unit;
> (B)   in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
> (C)   established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of--
> (i)   a separation agreement, divorce decree, or property settlement agreement;
> (ii)   an order of a court of record; or
> (iii)   a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
> (D)   not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. § 101(14A).

### 1. Identity of Payee

The language of § 523(a)(5) appears to limit non-dischargeable DSO debts to those "owed to or recoverable by a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or a government unit[,]" and there are opinions from outside the Ninth Circuit that have read § 523(a)(5) narrowly, confining the scope of § 523(a)(5) to its explicit terms. *See, e.g. In re Brooks*, 371 B.R. 761, 768 (Bankr. N.D. Tex. 2007). However, this Court is bound by Ninth Circuit precedent, and the Ninth Circuit has recognized that "[f]ees paid to third parties on behalf of a child or former spouse can be 'as much for . . . support as payments made directly to [the former spouse or child].'" *In re Chang*, 163 F.3d 1138, 1141 (9th Cir. 1998) (quoting *In re Catlow*, 663 F.2d 960, 962-63 (9th Cir. 1981)).

In *Chang*, the Ninth Circuit held that, under the circumstances of the case before it, "the identity of the payee [was] less important than the nature of the debt," and determined that professional fees owed to a third-party who was not one of the enumerated payees in § 523(a)(5) were nevertheless non-dischargeable DSO obligations. *Id.* Although the facts in this case are not identical to the facts in *Chang*, the Ninth Circuit has left the door open for courts to find that debts owed to payees who do not fall within the list of enumerated payees in set forth in § 523(a)(5) are non-dischargeable DSO obligations.

Mr. Wilson cites to *In re Gunness*, 505 B.R. 1 (B.A.P. 9th Cir. 2014) to support his argument that the debt at issue is not a domestic support obligation within the confines of the Code, but the Court does not find the facts of *Gunness* analogous to the facts of this case.[3]

In *Gunness*, at the time of the filing, the debtor and her husband jointly and severally owed attorneys' fees to the debtor's husband's ex-wife, some of which fees were payable to the ex-wife and some of which fees were payable directly to the ex-wife's attorney. 505 B.R. at 2. The debtor moved for summary judgment and asked the bankruptcy court to find that the debt was dischargeable. *Id.* at 3. The bankruptcy court granted summary judgment in favor of the debtor, and in reaching its decision, focused on the fact that there was no familial relationship between

---

[3] The Court will also note that there is no Ninth Circuit authority that renders Ninth Circuit B.A.P. decisions binding on bankruptcy courts.

the debtor and her husband's ex-wife. *Id.*

The Ninth Circuit B.A.P. affirmed, finding that the debt did not have the requisite connection to any of the payees enumerated in § 523(a)(5) or § 523(a)(15). *Id.* at 7-8. The Ninth Circuit B.A.P. noted that when courts have found debts to be non-dischargeable despite such debts not being directly payable or owed to a spouse, former spouse, or child, either "the bounty of [such] debt[s] had flowed to one of those family members explicitly covered by the statute, or the discharge of [such] debt would have adversely impacted the finances of one of those explicitly-covered family members." *Id.* at 6. Under the facts in *Gunness*, not only was the debt not owed to an enumerated payee, but: (1) the bounty of the debt, i.e. the benefit of the attorneys' services, did not flow to an enumerated payee; and (2) the discharge of the debt would not have had any adverse impact on the finances of an enumerated payee. *Id.* at 7.

In this case, although the payee is Mr. Wilson's former spouse's attorney, who is not an enumerated payee under § 523(a)(5), the benefit of the debt at issue flowed to Mr. Wilson's former spouse, who is an enumerated payee under § 523(a)(5). Mr. Cozart's services benefitted Ms. Wilson during the parties' divorce proceedings, and had the State Court not ordered Mr. Wilson to contribute to his ex-wife's attorneys' fees, Ms. Wilson would have been liable for such fees, even if such fees would now be uncollectable against her by virtue of an applicable statute of limitations.

The debt at issue has a direct link to one of the payees enumerated in § 523(a)(5), and given that the benefit of the debt flowed to that enumerated payee, the Court cannot find that this debt does not fall within the scope of § 523(a)(5) merely because the debt is payable directly to Mr. Wilson's ex-wife's attorney rather that to his ex-wife.

### 2. In the Nature of Support

In order to determine whether a particular award is a DSO, the Court must determine whether the award is "actually in the nature of support." *In re Chang*, 163 F.3d at 1140 (quoting *Shaver v. Shaver*, 736 F.2d 1314, 1316 (9th Cir. 1984)); *In re Gionis*, 170 B.R. 675, 681 (B.A.P. 9th Cir. 1994), *aff'd,* 92 F.3d 1192 (9th Cir. 1996).

There are a number of factors that guide courts in determining whether an award is actually

in the nature of support. *In re Gionis*, 170 B.R. at 682. Primary among these factors are the recipient's need and the state court's intent in rendering the award. *See id.* An award of spousal maintenance in favor of a party is indicative of that party's need. *See id.*

In this case, although the State Court's labelling of the award of attorneys' fees as "non-taxable spousal support" is not dispositive, the State Court's word choice does shed light on the State Court's intent in rendering the award. Further, the State Court found a disparity in financial resources between the parties and awarded Mr. Wilson's ex-wife spousal and child support. These support awards indicate that Mr. Wilson's former spouse was in financial need at the time the attorneys' fees were awarded, and the attorneys' fees award financially benefitted Mr. Wilson's former spouse when it was rendered.

At this juncture, the Court cannot find that the debt was not in the nature of support.

### 3. Remaining § 523(a)(5) Elements

The last two elements of § 523(a)(5) require that the debt at issue be established in "a separation agreement, divorce decree . . . [or] order of a court of record;" and "not [be] assigned to a nongovernmental entity . . . ." for purposes other than collection.

The debt at issue was established in the parties' *Judgment for Dissolution of Marriage* and was modified and reasserted in related subsequent orders issued by a court of record. Further, there is no indication that this debt was assigned by Mr. Cozart to a nongovernmental entity.

Accordingly, the Court cannot find as a matter of law that the debt at issue does not fall within the scope of § 523(a)(5).

C.     523(a)(15) – Divorce/Separation Agreement Debt

Section 523(a)(15) excepts from discharge "any debt – to a spouse, former spouse, or child of the debtor and not of the kind described in [§ 523(a)(5)] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit[.]"

Section 523(a)(15) was added to the Bankruptcy Code to supplement the exception to discharge for DSOs set forth in § 523(a)(5), thereby broadening the scope of the marital debts

that are non-dischargeable. *Adam v. Dobin* (*In re Adam*), No. ADV 12-01295-DS, 2015 WL 1530086, at *5 (B.A.P. 9th Cir. Apr. 6, 2015), *aff'd,* 677 F. App'x 353 (9th Cir. 2017); 4 COLLIER ON BANKRUPTCY ¶ 523.23 (16th ed. 2018) (citing Pub. L. No. 103-394, § 304 (1994)).

BAPCPA broadened the marital debt exceptions to discharge even further by amending § 523(a)(15) to remove the financial capacity and balancing of the detriments components that were part of the original statute, and by amending § 523(c)(1) so that debts falling within the scope of § 523(a)(15) are no longer automatically discharged if a party does not request a determination from the bankruptcy court. *In re Adam*, 2015 WL 1530086, at *5-6. "The evolution of § 523(a)(15) demonstrates Congress's intent to spread as large a net, and to include as many marriage dissolution-related claims as possible, within this exception to discharge." *Id.* at *4; *see also Francis v. Wallace* (*In re Francis*), 505 B.R. 914, 919 (B.A.P. 9th Cir. 2014) (noting that circuit courts of appeals, particularly the Fifth, Sixth, Seventh, and Ninth Circuits, have recognized the wide breadth of § 523(a)(15)).

Although a goal of bankruptcy is to provide debtors with a fresh start, and although exceptions to discharge must generally "be strictly construed against the objecting creditor and liberally in favor of the debtor[,]" courts have recognized "an overriding public policy favoring the enforcement of familial obligations." *Kawaauhau v. Geiger*, 523 U.S. 57, 62, 118 S. Ct. 974, 977, 140 L. Ed. 2d 90 (1998); *Mele v. Mele* (*In re Mele*), 501 B.R. 357, 363 (B.A.P. 9th Cir. 2013) (quoting 4 COLLIER ON BANKRUPTCY ¶ 523.05 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2013)); *McFadden v. Putnam* (*In re Putnam*), No. 10-19719-A-7, 2012 WL 8134423, at *5 (Bankr. E.D. Cal. Aug. 30, 2012) (quoting *Shaver*, 736 F.2d at 1316).

In essence, a debt is non-dischargeable pursuant to § 523(a)(15) if: "(1) . . . the debt in question is owed to a former spouse of the debtor; (2) . . . the debt is not a support obligation within the meaning of § 523(a)(5); and (3) . . . the debt was incurred in the course of a divorce or separation or in connection with a separation agreement, divorce decree, or other order of a court of record." *Adam*, 2015 WL 1530086, at *6.

As in the § 523(a)(5) context, caselaw has expanded the scope of § 523(a)(15) to cover certain debts payable to non-designated payees. *In re Francis*, 505 B.R. 914, 919-20 (B.A.P. 9th

Cir. 2014) (finding that "[t]here is no requirement in § 523(a)(15) that a debt obligation incurred as part of a dissolution judgment be payable directly to the ex-spouse in order to be excepted from a debtor's discharge").

Here, the Court cannot find that the debt owed to Mr. Cozart does not fall within the scope of § 523(a)(15) merely because it is owed to Mr. Wilson's ex-spouse's family law attorney, who is not an enumerated payee, rather than to his ex-spouse, who is an enumerated payee, given that the benefit of the debt flowed to Mr. Wilson's ex-spouse.

**IV.  Conclusion**

Even accepting Mr. Wilson's SOF for purposes of determination of this summary judgment motion, Mr. Wilson has failed to establish that he is entitled to judgment as a matter of law.

The Court cannot find, based on what is before it and viewing the facts in a light most favorable to Mr. Cozart, that the debt at issue, the amount of which remains in dispute, does not fall within the exceptions to discharge set forth in § 523(a)(5) or § 523(a)(15) of the Code.

Wherefore, based upon the foregoing and for good cause shown:

**IT IS HEREBY ORDERED** that the Motion is denied.

**DATED AND SIGNED ABOVE.**